WILL et al. v. POSTAL TEL. CABLE CO.

(Supreme Court, Appellate Division, Fourth Department.  March 14, 1896.)

1. TELEGRAPH COMPANIES—REGULATIONS.
   A regulation of a telegraph company that its messenger boy, sent to receive a telegram for transmission, shall be deemed the agent of the sender, is invalid.

2. SAME—WAIVER.
   Such regulation, if valid, is waived by the company where, on receipt of a telegram requesting a reply, it directs the messenger boy delivering the telegram to obtain an answer.

Appeal from circuit court.

Action by William C. Will and another against the Postal Telegraph Cable Company.

The action was brought to recover damages caused by the defendant's failure to transmit a message sent by the plaintiffs to one of their firm in reply to a prior message received from him. From a judgment for plaintiff for $555.25, defendant appeals.  Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

H. C. Day, for appellant.

D. N. McNaughton, for respondents.

ADAMS, J.   It is now a well-settled rule of law that corporations may restrict their common-law liability by express stipulation.   This rule has its limitations, however; and such advantage has been taken of the opportunity which it affords to certain classes of corporations to escape all liability upon their contracts that the tendency of the courts has very properly been in the direction of its restriction, rather than expansion.   Breese v. Telegraph Co., 48 N. Y. 141; Nicholas v. Railroad Co., 89 N. Y. 370; Kenney v. Railroad Co., 125 N. Y. 422, 26 N. E. 626; Mowry v. Telegraph Co., 51 Hun, 126, 4 N. Y. Supp. 666; Pearsall v. Telegraph Co., 124 N. Y. 256, 26 N. E. 534.   It has never, so far as we are aware, been held to exempt a corporation from the consequences of conduct which amounts to gross negligence, but precisely where to draw the line between acts of ordinary negligence and those to which a harsher term may be applied is sometimes attended with considerable difficulty.   Fortunately, however, this case is relieved of this embarrassment, for, if ever there was an act which could be characterized as flagrantly careless, it was the omission of this defendant to forward the dispatch in question.   A telegram had been received from one of the plaintiffs, who was in the city of New York, addressed to his firm, in the city of Buffalo, which not only bore upon its face evidence that it related to important business affairs which required prompt attention, but it also in express terms demanded an immediate reply;  and with a full appreciation of its importance, as well of its requirements, the defendant's manager, McLean, sent it to the plaintiffs, with directions to the messenger boy by whom it was sent to wait for an answer.   The an-

swer was obtained by the messenger, and securely placed in his pocket, where it remained until accidentally discovered some time on the following day; and, although he returned to the defendant's office soon after leaving the plaintiff's place of business, it does not appear that either the operator or the manager bestowed sufficient thought upon the subject to inquire if the plaintiffs had furnished him with an answer. These facts are uncontroverted, and it seems that the defendant seeks immunity from the negligence which they establish, gross as it is shown to be, by a provision which it has incorporated into the "terms" or "conditions" upon which it consents to transact business with the public, and which is, in effect, that whenever a message is sent to its office by one of its messengers, the latter is to be deemed the agent of the sender. This is certainly a most remarkable "regulation," and it is one of which, we have no hesitation in saying, the defendant should not be permitted to avail itself. It is a well-known fact that, as competitive agencies, the various telegraph companies in this country have wires and appliances placed in the stores and offices of their patrons in the larger cities, by means of which a messenger can be summoned from the central office at any time to take a dispatch to that office. These messengers are in the employ of the companies, and they are sent in response to calls for their services in order to obtain business for the companies which they represent; and it appears that the defendant was at this very time making use of this agency to increase its patronage in the city of Buffalo. Now, it would be a singular condition of affairs if a patron of one of these companies, through an instrumentality which the latter had furnished, should summon a messenger who was in its employ for this very purpose, deliver to him a message to be transmitted by the company for a money consideration, and then, when it became necessary to call the company to account for some omission of duty upon the part of the messenger, discover that, in order to avail himself of the means thus provided, he had been obliged to stipulate that the messenger was his, and not the company's, agent, and that he had thereby released the company from all responsibility, so far as the acts or omissions of the messenger were concerned. It is undoubtedly within the power of a telegraph company, as it is of any other corporation, to make rules and regulations for the proper conduct of its business; but such rules should be reasonable in their character, and in accord with good, sound public policy. The one under consideration was neither. On the contrary, it was an imposition upon the public and upon every patron of the defendant who had not the time or disposition to go in person to its transmitting office for the purpose of sending a message. Telegraph companies are creatures of the state. They are organized and transact business because of the pecuniary gain which they expect to reap from the public, and they are certainly under some obligation to serve the public; but if they are to be permitted to establish a regulation like the one in question, there is no reason why they should not impose upon their patrons, as a condition of transacting their business and re-

ceiving their money, the requirement that the operator, and the messenger at the other end of the line, shall be regarded as their agents; and it consequently becomes merely a question of time when, in this manner, the companies shall escape what little liability they still assume.

We have chosen thus far to consider this case upon the lines indicated, for the reason that we believe it to be the duty of the courts to place some wholesome limitations upon the rule under which corporations are attempting, by shrewd and ingenious devices, to escape all responsibility for their negligent acts; but we do not regard this case as necessarily resting upon the principle thus enunciated, for the evidence shows quite conclusively that the defendant's messenger boy was directed to obtain an answer to the message in question, and that he did in fact solicit and receive one. This being the case, he was unquestionably the defendant's agent, even if the "regulation" were to be given the full effect claimed for it. In other words, by asking, waiting for, and receiving the plaintiff's message, the defendant ignored and waived the rule which it is now seeking to avail itself of. Cross v. Insurance Co., 132 N. Y. 133, 30 N. E. 390; Forward v. Insurance Co., 142 N. Y. 382, 37 N. E. 615.

Our attention has not been directed to any exception in the case which appears to furnish sufficient ground for reversal, and we are therefore of the opinion that the judgment appealed from should be affirmed.

Judgment affirmed, with costs. All concur.